UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re                          )   Case No. _____

                                  )

                                  )   NOTICE OF **_PRELIMINARY_**

                                  )   HEARING ON MOTION

                                  )     FOR USE OF CASH COLLATERAL

                                  )     TO OBTAIN CREDIT

Debtor(s)                      )   *(Check One)*

YOU ARE NOTIFIED THAT:

1.   The undersigned moving party, _____, filed a Motion    For Use of Cash Collateral    To Obtain Credit *(check one)*. A copy of the motion is attached; and it includes BOTH (i) the statement required by Local Form #541.7, and (ii) the following allegations:

     a.   The immediate and irreparable harm that will come to the estate pending a final hearing is _____.

     b.   The amount of    cash collateral    credit *(check one)* necessary to avoid the harm detailed above prior to the final hearing is _____.

2.   The name and service address of the moving party's attorney (or moving party, if no attorney) are: _____.

3.   A **_PRELIMINARY_** HEARING on the motion WILL BE HELD ON _____ AT _____ IN _____. Testimony will be received if offered and admissible.

4.   If you wish to object to the motion, you must do one or both of the following: (1) attend the preliminary hearing; and/or (2) file with the Clerk of Court (i.e., if the 5-digit portion of the Case No. begins with "3" or "4", mail to 1001 SW 5th Ave. #700, Portland OR 97204; OR if it begins with "6" or "7", mail to 405 E 8th Ave #2600, Eugene OR 97401), a written response, which states the facts upon which you will rely and, if the response is filed within three business days before the hearing, notify the judge's chambers by telephone immediately after filing the document, as required by LBR 9004-1(b). See Local Form #541.51 for details.

5.   On _____ copies of BOTH this notice AND the motion were served pursuant to FRBP 7004 on the debtor(s); any debtor's attorney; any trustee; any trustee's attorney; members of any committee elected pursuant to 11 U.S.C. §705; any Creditors' Committee Chairperson [or, if none serving, on all creditors listed on the list filed pursuant to FRBP 1007(d)]; any Creditors' Committee attorney; the U.S. Trustee; and all affected lien holders whose names and addresses used for service are as follows:

 

 

_____
Signature

_____
(If debtor is movant) Debtor's Address & Taxpayer ID#(s) (last 4 digits)

541.1 (12/1/13)    **\*\*LOCAL FORM #541.51 ATTACHED IF this NOTICE served on PAPER\*\***

Joseph A. Field, OSB 98041
joe@fieldjerger.com
Matt Arbaugh, OSB 020251
matt@fieldjerger.com
Jonathan Smale, OSB # 091518
jonathan@fieldjerger.com
Field Jerger LLP
621 SW Morrison St. #1225
Portland, OR 97205
Tel. (503) 228-9115
Fax (503) 225-0276
        Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>CROSSROAD STATION, LLC.<br><br>　　　　Debtor. | Case No.: 14-30557-elp11<br><br>DEBTOR'S MOTION FOR TEMPORARY AND FINAL AUTHORITY TO USE CASH COLLATERAL |

### Certificate of Conferral

Prior to filing this motion, the undersigned counsel for Crossroad Station, LLC (the "Debtor"), conferred with counsel for its senior secured creditor, Bank of the Cascades (the "Bank"). The Debtor hopes to achieve consensus with the Bank.

### Bankruptcy Rule 4001(b)(1)(B) Concise Statement

(i)  The name of each entity with an interest in the cash collateral: Bank of the Cascades.

(ii) The purposes for the use of the cash collateral: To fund the Debtor's business operations

(iii) The material terms, including duration, of the use of the cash collateral: The Debtor seeks an interim order to authorize the use of the cash collateral through May 3, 2014 in accordance with the budget attached as Exhibit A.

(iv) Adequate protection: The adequate protections proposed for the Bank are monthly adequate assurance payments and a replacement lien on all property of the estate (tangible and intangible, real, personal or mixed), whenever acquired or arising, other than claims and causes of action of the estate arising under Chapter 5 of the Bankruptcy Code, subject and subordinate to all liens and security interests extant as of the Petition Date.

## Introduction

1. The Debtor owns a retail business park consisting of a Shell gas station, a laundromat, a car wash, a convenience store and three rental premises tenanted by a Subway franchise, a drive-through coffee kiosk and an available 1,400 square foot premise. The Debtor's real property is located at 56896 Venture Lane, Sunriver, Oregon.

2. In 2007, the Debtor's then-75% owner, Jay Audia ("Audia"), was over-levered into multiple new real residential estate ventures in Central Oregon and needed cash. To raise cash, he had the Debtor enter into loan agreements with the Bank to convert equity to debt. To secure the loan, the Debtor granted the Bank a deed of trust encumbering its real property and a blanket lien encumbering its personal property. The Bank lent the Debtor approximately $2.8 million based on an appraisal of $3.5 million. This new loan was in addition to the Debtor's $350,000 line of credit from the Bank.

3. Audia and the Debtor's 25% minority owner David Howland, CPA ("Howland"), personally guaranteed the Debtor's loans. The Debtor distributed the cash it borrowed to its two LLC members. Howland reinvested his distribution from the Debtor in Hammer Time, LLC, a hardware store across the street from the Debtor's business park of which Howland owns 30.86% of the membership interests.

4. In July 2008, one year receiving 75% of the Debtor's loan proceeds and under the duress of Central Oregon's residential real estate collapse, Audia committed suicide.

5. In 2011, Howland, as the sole surviving guarantor of the Bank's debt, purchased Audia's 75% interest in the Debtor for $59,500, plus assumption of the Audia's estate's debt.

6. From 2008 to 2012, despite the economic collapse in Central Oregon, the Debtor never missed a payment to the Bank. During this period of time, Bend, Oregon real estate values have significantly recovered back their 2008 nadir.

7. In the spring of 2012, the Debtor's loan from the Bank matured. The Bank refused to extend the maturity date or to refinance the Debtor. The Debtor was unable to borrow sufficient capital from a third party to repay the Bank. As a consequence, the Debtor defaulted. The Bank's refusal to refinance the Debtor was apparently based on its contemporaneous $1.885 million appraisal. This appraisal was for a distress sale of the Debtor's real estate and excluded tangible personal property such as fixtures, equipment and inventory as well as intangible personal property, such as good will. The Debtor does not know why the Bank and its appraiser did not include all of the Debtor's assets in their valuation, especially given the Debtor's numerous going concern profit centers.

8. Later in 2012, the Bank sued the Debtor and Howland and obtained a $2.857 million money judgment against the Debtor and Howland and a judgment of foreclosure on its deed of trust against the Debtor's real property.

9. On June 6, 2013, to stop the Bank's pending foreclosure sale, the Debtor filed a chapter 11 bankruptcy case, case number 13-33636-rld11.

Field Jerger LLP
621 SW Morrison St. #1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225- 0276

10. In the summer of 2013, in support of its motion for relief from stay, the Bank obtained another appraisal of the Debtor's real property only, with a distress sale scenario valuation of $1.55 million. The Debtor does not understand the relevance of this appraisal for an entity with successful going concerns and significant personal property assets too.

11. The Debtor believes that its first bankruptcy attorney provided it with insufficient legal advice, resulting in the Debtor's failure to comply with the Bankruptcy Code. The US Trustee and the Bank filed motions to dismiss and the Debtor's attorney incorrectly stated in a letter to the Court that the Debtor had reached settlement with the Bank and that it did not object to dismissal. In November 2013, the Court granted the motions to dismiss.

12. Subsequent to November 2013, Howland opened a Subway franchise on leased premise from the Debtor. Howland is an experienced Subway franchisee and owns one third of the membership interests in 18 Subway franchises in California. In its two months of operations, Howland's Subway on the Debtor's premise has been a resounding success. It has significantly contributed to the Debtor's Shell Station's bottom line. In the interest of synergies with the Debtor's other business units, Howland plans to rent the Debtor's final vacant 1,400' space from the Debtor to operate a complimentary franchised food purveyor.

13. In January 2014, the Debtor's settlement talks with the Bank failed. The Bank has set a Sheriff's sale on the Debtor's real property for February 4, 2014. The Debtor and Howland have the wherewithal to confirm and perform a plan of reorganization with

Field Jerger LLP
621 SW Morrison St. #1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225- 0276

100% repayment to all creditors.  The Debtor and the Bank disagree on the Bank's stated

$3.5 million loan balance and disagree on the value of the Debtor.

14. The valuation disputes between the Debtor and the Bank pertain to: (1) the value of the

Debtor's assets as ongoing concerns, and; (2) the fact that the Bank has not yet accounted

to the Debtor for the money it garnished from the Debtor and the money it obtained from

Howland on its four charging orders against some of Howland's Oregon and California

LLC membership interests.

15. Among other assets, Howland has a CPA practice and significant fractional interests in

investment real estate and Subway franchises.  Due to overflow business from his two

month old Subway franchise on the Debtor's premise, Howland has improved the

Debtor's operations in 2014.  Indeed, the Debtor's Shell gas station manager attributes an

8% increase in sales during this poor year for snow and winter tourism to increased

traffic from the Subway franchise.  The Debtor and its gas station manager anticipate a

further increase in traffic and further improved operations from Howland's new food

operation in the Debtor's vacant 1,400 foot retail space.

16. To the extent necessary and prudent, Howland intends to use his personal assets and his

personal access to credit to recapitalize the Debtor with significant equity contributions.

17. The Debtor and its undersigned counsel have carefully reviewed the US Trustee's and the

Bank's motions to dismiss from the Debtor's 2013 chapter 11 bankruptcy case.  The

Debtor's proposed counsel is experienced in chapter 11 and has carefully reviewed the

Debtor's obligations with the Debtor and the Debtor's missteps in its prior chapter 11

Field Jerger LLP
621 SW Morrison St. #1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225- 0276

case.  To improve the Debtor's performance as a chapter 11 debtor in possession,
Howland plans to subsidize the Debtor with regular equity contributions, in lieu of
lending money to the Debtor.  The Debtor does not intend to make any member
distributions during the pendency its chapter 11 bankruptcy case.  Likewise, the Debtor
will not pay any pre or post petition obligations without permission from the Bankruptcy
Court.

18. Prior to filing its 2014 bankruptcy petition, in the interests of an efficient chapter 11
bankruptcy case, the undersigned Debtor's counsel conferred with counsel for Howland,
the US Trustee, the Bank and counsel for the Debtor's Shell Oil gasoline distributor.

### Motion

Pursuant to 11 U.S.C. § 363(c) and Bankruptcy Rule 4001(b), the Debtor respectfully
moves the Court for an order: (a) authorizing the Debtor to use the cash collateral of its secured
creditor, the Bank, on a temporary basis until a final hearing can be held on this motion, and; (b)
after final hearing is held pursuant to Bankruptcy Rule 400 1(c)(2), for a final order authorizing
the Debtor to use cash collateral during the pendency of its case.  In support of its motion, the
Debtor offers the following Points and Authorities.

### Points and Authorities

1.    On February 3, 2014, (the "Petition Date"), the Debtor filed its voluntary petition for
relief under Chapter 11 of Title 11 of the United States Code.

2.    The Debtor has continued in possession of its property and is continuing to operate and
manage its businesses as debtor in possession pursuant to Sections 1107(a) and 1108 of the
Bankruptcy Code.

Field Jerger LLP
621 SW Morrison St. #1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225- 0276

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2).

4.      No request has been made for the appointment of a trustee or an examiner, and no official

committee has been established in this case.

5.      The Debtor is an Oregon limited liability company.  The Debtor operates its business in

Sunriver, Oregon"

6.      The, Debtor is indebted to the Bank under certain written loan documents and a judgment

in the approximate amount of $3.5 million (the "Indebtedness").

7.      The Indebtedness is secured by security interests and liens on substantially all of the

Debtor's real and personal property, including cash collateral.  The Debtor estimates the value of

the Debtor's real and personal property is approximately $3.5 million.

8.      The Debtor seeks to improve the finances of its business by filling an existing vacancy

with a complimentary new tenant, to draw more customers to its gas station, just like its newly

opened Subway franchise has done.  The Debtor's principal also intends to recapitalize the Debtor

via personal equity injections and to reorganize the Debtor through a chapter 11 plan which will

pay creditors 100%.  The Debtor intends to fund its chapter 11 plan from business operations, its

principal's unrelated financial resources and an eventual refinancing or sale.

9.      In order to preserve and maintain the assets of the bankruptcy estate, the Debtor requires

cash for to pay its ordinary course operating expenses.

10.     The Debtor has prepared a budget, a copy of which is attached as Exhibit A, setting forth

the sums necessary to fund the Debtor's operations.  The Debtor's budget projects the amounts

Field Jerger LLP
621 SW Morrison St. #1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225- 0276

the Debtor will need on an interim basis for payment of operating expenses, pending a final

hearing on this matter.  The Debtor's budget then projects the amounts the Debtor will need

thereafter as additional expenses necessarily incurred for the Debtor's continued operations.  The

Debtor's budget is based on actually incurred expenses over the last twelve month operating

period and average monthly figures for ongoing variable expense line items and revenues, which

necessarily vary with the seasons.

11.     It is in the best interest of the Debtor, its creditors, and its estate for the Debtor to use the

Bank's cash collateral because the use of cash collateral will allow the continued operation of the

Debtor as a going concern and will maximize the Debtor's likelihood of confirming and

performing a chapter 11 plan, thereby maximizing the recovery to all creditors.

12.     Under section 363(c)(2) of the Bankruptcy Code, the bankruptcy court may authorize a

debtor in possession to use cash collateral if the secured creditors affected consent to such use or

their interests are adequately protected. *See, e.g., In re Mellor,* 734 F2d 1396, 1400 (9th Cir

1984).

13.     Section 361 of the Bankruptcy Code describes permissible means of adequate protection.

Under section 361, adequate protection may be provided by cash payments, replacement liens,

and other relief "as will result in the realization by such entity of the indubitable equivalent of

such entity's interest in such property." 11 USC § 361; *see United Sav.  Ass'n v. Timbers of

Inwood Forest Assocs., Ltd.*, 484 US 365, 369-73 (1988) (the "interest in property" entitled to

protection is "the value of the collateral" that secures the claim).  What constitutes adequate

protection is determined on a case by case basis.  *Resolution Trust Corp. v. Swedeland Dev.

Group, Inc. (In re Swedeland Dev. Group, Inc.),* 16 F3d 552, 564 (3d Cir 1994) ("[A]

Field Jerger LLP
621 SW Morrison St. #1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225- 0276

determination of whether there is adequate protection is made on a case by case basis."); *MBank Dallas, N.A. v. O'Connor (In re O'Connor),* 808 F2d 1393, 1396-97 (10th Cir 1987) (same); *Martin v. United States (In re Martin),* 761 F2d 472, 474 (8th Cir 1985) (same).

14.     The fundamental purpose of adequate protection is to adequately protect the interests for which creditors bargained prepetition.  *In re Worldcom, Inc.*, 304 BR 611, 618-19 (Bankr SDNY 2004) ("[T]he purpose of providing adequate protection is to insure that the secured creditor receives the value for which the creditor bargained prior to the debtor's bankruptcy.") (citing additional authorities).  "However, neither the legislative history nor the Bankruptcy Code requires the Court to protect a creditor beyond what was bargained for by the parties." *Id* at 619. Indeed, the "[c]ourt is not obligated to protect the creditor better than it did itself when making the loan and obtaining security." *In re Heatron, Inc.*, 6 BR 493, 496 (Bankr WD Mo 1980).  The interest to be protected by virtue of the adequate protection requirement is the lesser of the value of the debt or the value of assets securing the debt. *See In re Triplett*, 87 BR 25, 27 (Bankr WD Tex 1988) ("[U]nder the concept of adequate protection — only the preservation of the value of the lien is required.") (*citing In re Alyucan Interstate Corp*., 12 BR 803, 808 (Bankr D Utah 1981)); see also 11 USC § 506.

15.     The Debtor's use of cash collateral is necessary to continue the Debtor's business operations and to maintain itself as a going concern so it can successfully reorganize to improve its operations and profitability and to fully pay the Bank's allowed claim and all other creditors' approved claims in full.  If the Debtor is forced to liquidate, the value of the liquidated assets will leave the Bank with a large deficiency.  Where, as here, a debtor's use of cash collateral protects a creditor from loss, the secured creditor is adequately protected without any need for other forms

Page 9 of 11
Motion to Use
Cash Collateral

Field Jerger LLP
621 SW Morrison St. #1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225- 0276

of adequate protection, including interest payments. *See, e.g., Orix Credit Alliance, Inc. v. Delta Res., Inc. (In re Delta Res., Inc.),* 54 F 3d 722, 730 (11th Cir 1995), cert denied, 516 US 980 (1995); *Westchase I Assocs. v. Lincoln Nat'l Life Ins. Co. (In re Westchase I Assocs. L.P.),* 126 BR 692, 694 (WDNC 1991); see also *In re 499 W. Warren St. Assocs., Ltd. P'ship,* 142 BR 53, 56-57 (Bankr NDNY 1992) (finding secured creditor's interest in collateral adequately protected when cash collateral applied to normal operating maintenance expenditures on collateral property).  Courts have held that adequate protection may be demonstrated by a showing that the going concern value of a debtor is preserved by the debtor's continuing operations and use of collateral.  *See, e.g., In re Snowshoe Co.,* 789 F2d 1087-89 (finding that ski resort would lose 50% to 90% of its fair market value if it ceased operations); *In re Constable Plaza Assocs., L.P.,* 125 BR 98, 105 (Bankr SDNY 1991) (debtor entitled to use cash collateral to operate and maintain office building thereby protecting secured lender's collateral and existing equity cushion).  Accordingly, the Bank's interests will be adequately protected by virtue of the Debtor's continuing business operations.

16.     To foster goodwill with the Bank, in the hopes of a consensual, fast track chapter 11 plan confirmation, the Debtor proposes to make adequate assurance payments of $13,500 per month, which is the same adequate assurance payment as the Debtor paid to the Bank in the Debtor's 2013 chapter 11 bankruptcy case.

17.     As additional adequate protection for the Debtors' use of the Bank's collateral, the Debtor proposes that the Bank be granted a replacement lien on the Debtors' post petition personal property (the "Replacement Lien").  This lien would be the same kinds or categories of property that the Bank had a security interest in as of the Petition Date.  To the extent the

Field Jerger LLP
621 SW Morrison St. #1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225- 0276

Replacement Lien proves to be inadequate to protect against any diminution in the value of the

Bank's interest in the Debtors' prepetition property resulting from the Debtors' post petition use

of the Bank's collateral; the Bank should be entitled to an allowed administrative expense claim

under section 503(b) of the Bankruptcy Code that will have super priority as provided in section

507(b) of the Bankruptcy Code and will be secured by an additional perfected lien on all property

of the estate (real and personal, tangible and intangible), whenever acquired or arising, other than

claims and causes of action of the estate arising under Chapter 5 of the Bankruptcy Code, subject

only to (A) any and all validly perfected security interests and liens extant as of the Petition Date,

and (B) the Replacement Lien.  The Replacement Lien shall be (i) in addition to all other security

interests securing the Bank's claims extant as of the Petition Date, and (ii) perfected and

enforceable by operation of law upon entry of this Order without regard to whether such security

interests and liens are perfected under applicable nonbankruptcy law.  The Replacement Lien

shall secure the impairment, if any, of the value of the Bank's interest in the Debtors' property

and shall have the same relative priority as the Bank's security interests had on the Petition Date,

but shall not be construed to enhance or improve the Bank's position as of the Petition Date.

18.      A copy of the Debtor's proposed order is attached as Exhibit B.

19.      This motion does not contain any of the provisions specified in Local Form #541.7.

Dated:  February 4, 2014

Respectfully submitted by:

/s/ Joseph A. Field
Joseph A. Field, OSB # 94071
Field Jerger LLP
Email: joe@fieldjerger.com
Tel. (503) 228-9115
Fax (503) 225-0276
Attorneys for the Debtor

Exhibit A

**Crossroad Station, LLC**

| | Jan 14 | Feb 14 | Mar 14 | Apr 14 | May 14 | Jun 14 | Jul 14 | Aug 14 | Sep 14 | Oct 14 | Nov 14 | Dec 14 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | |
| Store | 60,868.35 | 54,494.81 | 61,984.48 | 60,065.53 | 75,109.30 | 88,043.48 | 111,762.48 | 109,865.89 | 81,870.08 | 68,874.31 | 56,505.17 | 63,959.92 | 893,403.80 |
| Sales-Propane | 640.10 | 816.67 | 980.73 | 1,025.72 | 1,795.27 | 2,142.92 | 2,794.78 | 2,735.81 | 1,724.28 | 1,836.10 | 1,078.76 | 1,003.42 | 18,574.56 |
| Sales-Fuel | 296,928.44 | 257,652.26 | 288,815.87 | 242,532.21 | 304,948.38 | 426,074.95 | 617,062.46 | 586,383.24 | 392,983.74 | 308,451.16 | 229,210.83 | 325,527.19 | 4,276,570.73 |
| **Total Income** | 358,436.89 | 312,963.74 | 351,781.08 | 303,623.46 | 381,852.95 | 516,261.35 | 731,619.72 | 698,984.94 | 476,578.10 | 379,161.57 | 286,794.76 | 390,490.53 | 5,188,549.09 |
| | | | | | | | | | | | | | |
| **Cost of Goods Sold** | | | | | | | | | | | | | |
| Propane | 562.20 | 310.47 | 310.00 | 387.50 | 782.75 | 1,512.80 | 1,003.04 | 1,404.62 | 682.00 | 750.75 | 451.58 | 606.95 | 8,764.66 |
| COGS-Store | 53,837.73 | 35,678.54 | 47,900.54 | 33,866.65 | 66,652.88 | 55,124.32 | 78,674.37 | 86,451.12 | 51,567.32 | 51,273.33 | 32,620.40 | 45,302.49 | 638,949.69 |
| Bottles | 1.30 | 64.65 | 90.45 | (168.30) | 611.15 | (429.05) | 294.38 | 318.50 | (206.60) | (46.25) | (61.80) | (60.45) | 321.95 |
| Fuel | 239,977.04 | 217,863.29 | 281,446.98 | 192,410.77 | 271,202.18 | 409,702.20 | 598,734.41 | 512,722.72 | 382,669.54 | 271,016.30 | 203,567.33 | 319,049.28 | 3,900,362.04 |
| **Total COGS** | 294,378.27 | 253,916.95 | 329,747.97 | 226,496.62 | 339,248.96 | 465,910.27 | 678,620.17 | 600,896.96 | 434,712.26 | 322,994.13 | 236,577.51 | 364,898.27 | 4,548,398.34 |
| | | | | | | | | | | | | | |
| **Gross Profit** | 64,058.62 | 59,046.79 | 22,033.11 | 77,126.84 | 42,603.99 | 50,351.08 | 52,999.55 | 98,087.98 | 41,865.84 | 56,167.44 | 50,217.25 | 25,592.26 | 640,150.75 |
| | | | | | | | | | | | | | |
| **Expense** | | | | | | | | | | | | | |
| Advertising / Promotion | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 886.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 886.00 |
| Automobile Expense | 953.62 | 446.28 | 521.70 | 629.32 | 825.74 | 889.94 | 897.87 | 1,113.09 | 959.51 | 548.34 | 994.40 | 1,079.11 | 9,858.92 |
| Bank Service Charges | 36.00 | 250.00 | 250.00 | 250.00 | 259.00 | 260.00 | 265.96 | 308.61 | 332.04 | 281.05 | 397.03 | 195.66 | 3,085.35 |
| Credit Card Fees | 5,759.80 | 4,728.69 | 4,709.65 | 5,059.18 | 5,275.32 | 7,155.35 | 12,650.79 | 10,760.82 | 7,665.49 | 6,165.51 | 3,974.73 | 6,915.46 | 80,820.79 |
| Dues and Subscriptions | 19.95 | 447.95 | 19.95 | 19.95 | 19.95 | 19.95 | 19.95 | 19.95 | 19.95 | 19.95 | 19.95 | 19.95 | 667.40 |
| Equipment Rental | 0.00 | 177.50 | 177.50 | 177.50 | 177.50 | 527.50 | 177.50 | 177.50 | 177.50 | 177.50 | 177.50 | 177.50 | 2,302.50 |
| Insurance | 1,723.95 | 1,131.25 | 493.00 | 1,840.70 | 1,193.00 | 7,780.93 | 1,656.99 | 1,163.95 | 1,723.95 | 1,163.95 | 1,723.95 | 1,723.95 | 23,319.57 |
| Inventory Crew Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 320.00 | 0.00 | 320.00 |
| Legal and Accounting | 56,313.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 58,513.00 |
| Bankruptcy Fees | 0.00 | 0.00 | 0.00 | 9,000.00 | 0.00 | 0.00 | 9,000.00 | 0.00 | 0.00 | 9,000.00 | 0.00 | 0.00 | 27,000.00 |
| Manager's Wages | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 48,000.00 |
| Office Supplies | 1,695.91 | 73.98 | 830.42 | 0.00 | 19.53 | 0.00 | 332.31 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,952.15 |
| Payroll-Gasoline | 7,943.24 | 5,456.68 | 5,987.35 | 5,055.48 | 6,086.60 | 6,233.31 | 8,800.95 | 9,187.27 | 7,960.72 | 6,808.24 | 7,424.95 | 9,145.27 | 86,090.06 |
| Payroll-Grocery | 1,675.80 | 2,440.70 | 3,106.26 | 2,486.61 | 3,170.97 | 3,406.92 | 3,391.83 | 3,271.09 | 3,134.69 | 3,922.75 | 2,461.63 | 1,742.68 | 34,211.93 |
| Payroll Taxes | 1,688.43 | 1,410.38 | 1,537.62 | 1,345.31 | 1,553.88 | 1,579.77 | 1,895.59 | 1,914.39 | 1,747.02 | 1,668.60 | 1,509.73 | 1,643.90 | 19,494.62 |
| Property Taxes | 0.00 | 10,000.00 | 0.00 | 10,000.00 | 10,000.00 | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 11,000.00 | 7,803.29 | 58,803.29 |
| Repairs and Maintenance | 339.00 | 733.51 | 132.15 | 402.98 | 1,655.24 | 1,107.28 | 931.38 | 820.28 | 5,027.21 | 2,191.41 | 871.80 | 175.00 | 14,387.24 |
| Security | 0.00 | 0.00 | 125.88 | 0.00 | 0.00 | 125.88 | 0.00 | 0.00 | 125.88 | 0.00 | 0.00 | 226.88 | 604.52 |
| Supplies | 438.93 | 187.19 | 254.34 | 224.13 | 719.75 | 112.81 | 911.33 | 869.60 | 260.04 | 429.34 | 1,226.35 | 217.99 | 5,851.80 |
| Taxes and Licenses | 540.00 | 0.00 | 100.00 | 0.00 | 0.00 | 1,529.00 | 0.00 | 100.00 | 150.00 | 144.00 | 447.00 | 252.98 | 3,262.98 |
| Telephone | 370.36 | 527.55 | 530.60 | 549.91 | 529.91 | 365.67 | 719.15 | 365.27 | 369.01 | 369.60 | 369.60 | 369.60 | 5,436.23 |
| Utilities | 4,510.87 | 5,251.77 | 4,759.63 | 4,960.91 | 4,393.24 | 4,785.59 | 4,913.57 | 4,958.29 | 4,419.48 | 5,203.84 | | | 57,890.90 |
| **Total Expense** | 88,008.86 | 37,463.43 | 27,736.05 | 46,201.98 | 40,079.63 | 50,965.90 | 50,656.39 | 39,185.39 | 38,811.30 | 42,019.16 | 41,218.10 | 41,413.06 | 543,759.25 |
| | | | | | | | | | | | | | |
| **Net Ordinary Income** | (23,950.24) | 21,583.36 | (5,702.94) | 30,924.86 | 2,524.36 | (614.82) | 2,343.16 | 58,902.59 | 3,054.54 | 14,148.28 | 8,999.15 | (15,820.80) | 96,391.50 |
| | | | | | | | | | | | | | |
| **Other Income/Expense** | | | | | | | | | | | | | |
| **Other Income** | | | | | | | | | | | | | |
| ATM Income | 265.71 | 423.49 | 426.07 | 506.40 | 398.68 | 543.83 | 528.35 | 699.95 | 849.75 | 676.77 | 546.36 | 352.05 | 6,217.41 |
| Car Wash Income | 3.99 | 3,075.04 | (967.90) | 1,545.18 | 2,455.52 | 2,751.91 | 4,130.87 | 3,612.00 | 1,156.04 | (73.04) | 570.74 | 499.24 | 18,759.59 |
| Interest Income | 471.46 | 471.46 | 471.46 | 471.46 | 471.46 | 471.46 | 471.46 | 471.46 | 471.46 | 471.46 | 471.46 | 471.46 | 5,657.52 |
| Laundromat Income | 455.00 | 430.00 | 750.00 | 790.00 | 254.76 | 1,646.00 | 1,675.57 | (356.14) | 1,805.50 | 677.00 | 585.00 | 1,193.41 | 9,906.10 |
| Miscellaneous Income | 128.46 | 38.67 | 318.31 | 24.01 | 38.93 | 273.04 | 795.61 | 603.26 | 271.74 | 67.89 | 92.34 | 109.64 | 2,761.90 |

**Exhibit A**
**Page 1 of 2**

**In re: Crossroad Station, LLC**
**Case No 14-30557 elp11**

**Crossroad Station, LLC**

| | Jan 14 | Feb 14 | Mar 14 | Apr 14 | May 14 | Jun 14 | Jul 14 | Aug 14 | Sep 14 | Oct 14 | Nov 14 | Dec 14 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rent-Espresso RHD Inc. | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 9,000.00 |
| Rent-Sunriver Subway | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 16,800.00 |
| Sales-Lottery | 236.65 | (169.83) | 465.78 | 182.07 | 274.83 | 991.54 | 398.30 | 525.82 | 148.62 | (309.99) | 561.51 | (379.40) | 2,925.90 |
| Total Other Income | 3,711.27 | 6,418.83 | 3,613.72 | 5,669.12 | 6,044.18 | 8,827.78 | 10,150.16 | 7,706.35 | 6,853.11 | 3,660.09 | 4,977.41 | 4,396.40 | 72,028.42 |
| | | | | | | | | | | | | | |
| Other Expense | | | | | | | | | | | | | |
| Cash over/short | (42.83) | 10.94 | (10.19) | 0.05 | 3.04 | 21.17 | 44.97 | 81.29 | (11.83) | 7.37 | (5.18) | 16.70 | 115.50 |
| Total Other Expense | (42.83) | 10.94 | (10.19) | 0.05 | 3.04 | 21.17 | 44.97 | 81.29 | (11.83) | 7.37 | (5.18) | 16.70 | 115.50 |
| | | | | | | | | | | | | | |
| | 3,754.10 | 6,407.89 | 3,623.91 | 5,669.07 | 6,041.14 | 8,806.61 | 10,105.19 | 7,625.06 | 6,864.94 | 3,652.72 | 4,982.59 | 4,379.70 | 71,912.92 |
| | | | | | | | | | | | | | |
| Net Operating Cash Flow | (20,196.14) | 27,991.25 | (2,079.03) | 36,593.93 | 8,565.50 | 8,191.79 | 12,448.35 | 66,527.65 | 9,919.48 | 17,801.00 | 13,981.74 | (11,441.10) | 168,304.42 |
| | | | | | | | | | | | | | |
| Debt Service | 0.00 | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | 148,500.00 |
| | | | | | | | | | | | | | |
| Monthly Cash Flow | (20,196.14) | 14,491.25 | (15,579.03) | 23,093.93 | (4,934.50) | (5,308.21) | (1,051.65) | 53,027.65 | (3,580.52) | 4,301.00 | 481.74 | (24,941.10) | 19,804.42 |
| | | | | | | | | | | | | | |
| Cash Beginning of Period | 0.00 | 3,779.86 | 18,271.11 | 2,692.08 | 25,786.01 | 20,851.51 | 15,543.30 | 14,491.65 | 67,519.30 | 63,938.78 | 68,239.78 | 68,721.52 | 0.00 |
| | | | | | | | | | | | | | |
| Owner Infusion | 23,976.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 23,976.00 |
| | | | | | | | | | | | | | |
| Cash at End of Period | 3,779.86 | 18,271.11 | 2,692.08 | 25,786.01 | 20,851.51 | 15,543.30 | 14,491.65 | 67,519.30 | 63,938.78 | 68,239.78 | 68,721.52 | 43,780.42 | 43,780.42 |

**Exhibit A**
**Page 2 of 2**

**In re: Crossroad Station, LLC**
**Case No 14-30557 elp11**

# Exhibit B

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>CROSSROAD STATION, LLC.<br><br>       Debtor. | Case No.:  14-30557-elp11<br><br>ORDER AUTORIZING DEBTOR'S<br>INTERIM USE OF CASH COLLATERAL |

THIS MATTER came before this Court on the motion of Crossroad Station, LLC, the

debtor and the debtor-in-possession (the "Debtor"), for an interim order allowing the Debtor to

use cash collateral.  The Court reviewed the Debtor's written submissions and any other written

submissions on file and held a hearing on February 5, 2014 at 9:30 am.  The Court makes the

following findings:

A.  On February 3, 2013 (the "Petition Date"), The Debtor filed a voluntary petition under

    Chapter 11 of the Bankruptcy Code.  The Debtor continues in the management and

    possession of its business and property as debtor in possession under sections 1107 and 1108

of the Bankruptcy Code.  As of the date hereof, no trustee or examiner has been requested or appointed in these cases, and the United States trustee has not appointed any official committee.

B.  The Debtor owns and operates a business park consisting of a Shell gasoline station, a convenience store, a laundromat, a car wash and is lessor to a franchisee's Subway[1], a lessee's coffee drive through business and a 1,400 square foot vacant retail space for which the Debtor's principal Howland is in negotiations to acquire complimentary food franchise as a lessee.

C.  The Debtor and the Bank are parties to various loan agreements, security agreements financing statements and amendments thereto (collectively and as in effect as of the Petition Date, the "Loan Documents").  The Bank asserts that on the Petition Date the Debtor was indebted to it in the total amount of approximately $3.5 million, including unpaid principal, accrued but unpaid interest and daily fees, costs and expenses.  Under the Loan Documents, the Bank asserts a security interest in essentially all of the Debtor's tangible and intangible personal property and by virtue of its security interest under the Loan Documents, the Bank asserts an interest in all of the Debtors' existing cash collateral (as defined in section 363(a) of the Bankruptcy Code) and in all accounts and payment intangibles that will be collected by The Debtor post-petition.

///

///

---

[1] The Debtor's sole member and managing member David Howland, CPA is the sole member and managing member of the entity which owns the Subway franchise.

Page 2 of 8                          *In re: Crossroad Station, LLC.*
Order Authorizing Use of
Cash Collateral

D.  Without the use of the Bank's Cash Collateral, the Debtor is without sufficient funds to

support its continued operations.  The Debtor seeks to use the Bank's Cash Collateral

pursuant to sections 105(a) and 363(c)(1) and (2) of the Bankruptcy Code, the Budget

attached as Exhibit A, and the terms and conditions of this order, to pay its continued

operating expenses.

E.  The entry of this Order will minimize disruption of the Debtor's business operations,

preserve the going concern value of the Debtor's business, and is in the best interest of the

Debtor's estate.  The Debtor does not believe that it can continue to operate its business or

preserve the value of its assets without the use of the Bank's Cash Collateral and will face

immediate and irreparable harm if the relief requested is not granted.

F.  The adequate protection and other relief granted to the Bank in this Order are reasonable and

appropriate in the circumstances.

G.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and this

matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M).  The notice the Debtor

provided of the hearing on entry of this Order was sufficient and appropriate under the

circumstances and satisfies the requirements of FRBP 4001(b) and LBR 4001-2.

Based on the foregoing and being otherwise fully advised in the premises, IT IS

HEREBY ORDERED that:

1.  The Debtor is authorized to use the Bank's Cash Collateral in accordance with the terms and

conditions set forth herein.

2.  The Bank's Cash Collateral shall be used only for the purposes and up to the amounts listed

in the budget attached as Exhibit A (the "Budget"); provided, however, that the Debtor's total

expenditures may exceed the aggregate budgeted amount by up to 7.5% and the Debtor's

expenditures for any line item may exceed the amount budgeted for that line item by up to 10% of the budgeted amount.  To the extent that the Debtor exceeds these variances, the Debtor may supplement its revenues via equity contributions from the Debtor's principal to remain in compliance with this order.

3.  As adequate protection for the Debtors' use of the Bank's collateral, (a) the Bank is hereby granted a replacement lien on the Debtors' post petition personal property (the "Replacement Lien") that is the same kinds or categories of property that The Bank had a security interest in as of the Petition Date, and (b) to the extent the Replacement Lien proves to be inadequate to protect against any diminution in the value of the Bank's interest in the Debtors' prepetition property resulting from the Debtors' post petition use of the Bank's collateral, the Bank shall be entitled to an allowed administrative expense claim under section 503(b) of the Bankruptcy Code that will have super priority as provided in section 507(b) of the Bankruptcy Code and will be secured by an additional perfected lien on all property of the estate (real and personal, tangible and intangible), whenever acquired or arising, other than claims and causes of action of the estate arising under Chapter 5 of the Bankruptcy Code, subject only to (A) any and all validly perfected security interests and liens extant as of the Petition Date, and (B) the Replacement Lien.  The Replacement Lien shall be (i) in addition to all other security interests securing The Bank's claims extant as of the Petition Date, and (ii) perfected and enforceable by operation of law upon entry of this Order without regard to whether such security interests and liens are perfected under applicable nonbankruptcy law. The Replacement Lien shall secure the impairment, if any, of the value of the Bank's interest

///

///

Page 4 of 8                          *In re: Crossroad Station, LLC.*
Order Authorizing Use of
Cash Collateral

in the Debtors' property and shall have the same relative priority as the Bank's security

interests had on the Petition Date, but shall not be construed to enhance or improve the

Bank's position as of the Petition Date.

4.   The Debtor shall furnish to the Bank such financial and other information concerning the

Debtor's business activities and any of the pre-petition collateral and collateral secured by

the Replacement Lien as may be reasonably requested by the Bank from time to time.  For

compliance purposes, the Debtor shall provide weekly reports to the Bank to show its gross

receipts and itemized disbursements in accordance with its budget and showing the variance

amount.  Such reports shall be delivered by Tuesday of each week for the prior week.

5.   The Debtor shall keep the collateral in which the Bank claims a security interest or lien free

and clear of all liens, encumbrances and security interests, other than those in existence on

the petition date.  To preserve the Bank's security interest in its collateral, the Debtor shall be

required to make monthly payments to the Bank on the 20th of each month, commencing

February 20, 2014, in the sum of $13,500.

6.   The Debtor shall insure the Bank's collateral for the full insurable replacement value thereof

with insurance companies acceptable to the Bank.  The Debtor will provide the Bank with

certificates of insurance evidencing the Debtor's compliance with the parties contractual

insurance requirements and the Bank may purchase this requisite insurance and charge the

expense to the Debtor if it fails to obtain and maintain insurance within seven days of written

demand from the Bank.

7.   Each of the following shall be an Event of Default under this Order:  (a) spending other than

as permitted in this Order unless agreed by the Bank in writing; (b) failure to comply with

any of the obligations imposed by this Order; (c) appointment of a Chapter 11 trustee; (d)

Page 5 of 8
Order Authorizing Use of
Cash Collateral

*In re: Crossroad Station, LLC.*

**Exhibit B**          **In re: Crossroad Station, LLC**
**Page 5 of 8**       **Case No 14-30557 elp11**

conversion of this case to a case under Chapter 7; and (e) dismissal of this case; provided, however, that an Event of Default under paragraph (a) or (b) above shall not be effective until the seventh day following delivery by the Bank to the Debtor, its counsel and the United States Trustee of a written notice of default.

8.  Unless terminated earlier, the Debtor's authority to use cash collateral under this Order shall continue until the earlier of (i) the occurrence of an Event of Default, or (ii) May 3, 2014. The final hearing on the use of cash collateral shall be May 3, 2014, unless the parties submit a stipulation prior to that date.

9.  The Debtor is authorized to take all actions necessary to effectuate the relief granted by this Order.

10. The Debtor shall not allocate or expend any funds or other property which constitutes the Bank's collateral for any purpose not expressly permitted by this order or an amendment to this order.  This prohibition includes, but is not limited to payment of general administrative expenses which are not line items in the Debtor's budget.

11. The provisions hereof and the effect of any actions taken hereunder shall survive issuance and entry of any order converting this case to one under Chapter 7 of the Bankruptcy Code or dismissing this Chapter 11 case.  The priorities, liens and security interests granted herein shall continue in this or any superseding case under the Bankruptcy Code, and any such liens and security interests shall maintain their priority as provided herein until satisfied and discharged subject to the Bankruptcy Code.

///

///

///

Page 6 of 8
Order Authorizing Use of
Cash Collateral

*In re: Crossroad Station, LLC.*

**Exhibit B**
**Page 6 of 8**

**In re: Crossroad Station, LLC**
**Case No 14-30557 elp11**

12. Nothing herein shall (i) impair or limit any of the Bank's rights and remedies in this case or in any superseding case under the Bankruptcy Code, including the right to seek conversion or dismissal, or (ii) prejudice the right of the Bank to seek a modification of this Order for additional adequate protection.

13. The Bank's failure, at any time or times, to require strict performance by the Debtors of any provision of this Order shall not waive, affect or diminish any right of the Bank to demand strict compliance and performance therewith.  No delay on the part of the Bank in the exercise of any right or remedy under this Order shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy.  None of the rights or remedies of the Bank under this Order shall be deemed to have been suspended or waived by the Bank unless such suspension or waiver is in writing, signed by a duly authorized officer of the Bank and directed to Debtor specifying such suspension or waiver.  Likewise, nothing contained in this Order shall constitute a waiver by the Bank of any of its rights under the Loan Documents or other applicable law.

14. Nothing herein shall constitute a determination of the rights or interests of the Bank other than as specifically set forth in this Order.  Without limiting the generality of the foregoing sentence, nothing herein shall constitute a determination with respect to (i) the allowability or amount of the Bank's claims, (ii) the validity, enforceability or perfection or nonperfection of the Bank's security interests, or (iii) the extent or priority of the Bank's security interests.  In the event that the Bank's prepetition security interest is avoided or determined to be avoidable under any applicable provision of the Bankruptcy Code, then the Replacement Lien and any super priority treatment provided herein shall also be avoided.

///

15. This Order shall be effective immediately upon its entry.

16. This Court retains jurisdiction with respect to all matters arising from or related to the

implementation of this Order.

# # #

I certify that I have complied with the requirements of LBR 9021-1(a)(2)(A) and no party

has objected to this form of order.

Presented by:

_____
Joseph A. Field, OSB # 94071
Field Jerger LLP
621 SW Morrison Street, Suite 1225
Portland, OR 97205
(503) 228-9115
(503) 225-0276
E mail:  joe@fieldjerger.com
Of Attorneys for the Debtor

Page 8 of 8
Order Authorizing Use of
Cash Collateral

*In re: Crossroad Station, LLC.*

**Exhibit B**          **In re: Crossroad Station, LLC**
**Page 8 of 8**        **Case No 14-30557 elp11**

Joseph A. Field, OSB 98041
joe@fieldjerger.com
Matt Arbaugh, OSB 020251
matt@fieldjerger.com
Jonathan Smale, OSB # 091518
jonathan@fieldjerger.com
Field Jerger LLP
621 SW Morrison St. #1225
Portland, OR 97205
Tel. (503) 228-9115
Fax (503) 225-0276
    Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>CROSSROAD STATION, LLC.<br><br>     Debtor. | Case No.:  14-30557-elp11<br><br>CERTIFICATE OF SERVICE |

     I certify that on the date indicated below, I served the foregoing submissions on all parties registered for notice with the Court's CM/ECF system.


     Dated:  February 4, 2014


                /s/ Joseph A. Field          
                Joseph A. Field, OSB # 94071
                Field Jerger LLP
                Email: joe@fieldjerger.com
                621 SW Morrison St. #1225
                Portland, OR 97205
                Tel. (503) 228-9115
                Fax (503) 225-0276
                Attorneys for the Debtor